## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

In re:

Chicora Life Center, LC,

Debtor.

Case No. 16-02447-jw

Chapter 11

---

## DEBTOR'S DISCLOSURE STATEMENT

Filed by the Debtor-in-Possession on July 15, 2016

---

**Submitted by**:   MCCARTHY LAW FIRM, LLC
G. William McCarthy, Jr., I.D.#2762
Daniel J. Reynolds, Jr., I.D.#9232
W. Harrison Penn, I.D.#11164
*Attorneys for the Debtor*
1517 Laurel Street
P.O. Box 11332
Columbia, SC 29201-1332
(803) 771-8836
(803) 765-6960 (fax)

# DEBTOR'S DISCLOSURE STATEMENT

### Table of Contents

**Page**

I.      Introduction ------------------------------------------------------------------- 3

II.     History and Events Leading to Bankruptcy --------------------------------- 4

III.    Post-Petition Activity --------------------------------------------------------- 7

IV.     Property of the Debtor -------------------------------------------------------- 9

V.      Summary of Proposed Plan ------------------------------------------------- 10

        Plan Classifications ------------------------------------------------------- 10

VI.     Executory Contracts ---------------------------------------------------- 14

VII.    Liquidation and Other Alternatives ----------------------------------------- 14

VIII.   Feasibility of Plan ------------------------------------------------------------ 16

IX.     Further Financial Information ------------------------------------------------ 16

X.      Certain Risk Factors to be Considered -------------------------------------- 17

XI.     Tax Consequences------------------------------------------------------------- 18

XII.    Conclusion -------------------------------------------------------------------- 21

## DEBTOR'S DISCLOSURE STATEMENT

## I.      INTRODUCTION

Chicora Life Center, LC  (the "Debtor") provides this Disclosure Statement to all of its known creditors and parties in interest in order to disclose information considered by the Debtor to be important, material and necessary for creditors to make a reasonably informed decision in exercising their right to vote on the Debtor's Plan of Reorganization (the "Plan") which has been summarized herein and will be filed with this Disclosure Statement (the "Disclosure Statement") in the United States Bankruptcy Court for the District of South Carolina.   This Disclosure Statement must provide such information, as far as practicable, that would enable a hypothetical reasonable investor typical of the holders of claims against the Debtor, to make an informed judgment about the Plan.   The Debtor believes and asserts that the information provided in this Disclosure Statement gives information adequate for a hypothetical, reasonable investor to make a decision as to the Debtor's Plan.   The United States Bankruptcy Court will set a hearing to determine if this Disclosure Statement provides adequate information and conforms to the requirements of the Bankruptcy Code  (11 U.S.C. §101 et seq.).

### Voting Procedures

The United States Bankruptcy Court will set a date at a later time for a hearing on the acceptance of the Plan or may combine the Disclosure Statement and Plan hearings.   Notice of the Plan Confirmation Hearing will be mailed to all holders of claims, and upon receiving the Notice of Confirmation Hearing, holders of claims may then vote on the Plan by completing the ballot that will be mailed with the Plan and returning such ballot to the Bankruptcy Court.   The accompanying Notice of Hearing will specify a time within which the ballots must be returned. The vote of all creditors and holders of Claims is very important.   Because there are Impaired classes under the Plan, at least one non-insider class of Impaired Claims must accept the Plan in order for the Plan to be confirmed.   The Plan will be confirmed by the Court if the Plan is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the creditors or holders of Claims in each class voting on the Plan, and two-thirds (2/3) in number of the holders of allowed Interests voting on the Plan.   In the event the requisite number of acceptances is not obtained, the Court may still confirm the Plan if at least one class of Impaired Claims votes in favor of the Plan and the Court finds the Plan otherwise complies with Bankruptcy Code requirements and accords fair and equitable treatment to those classes

rejecting the Plan.

### General Provisions

If it is confirmed, the Plan will be a legally binding arrangement documenting how creditors' Claims will be addressed, therefore the Plan should be read in its entirety, rather than relying solely on the summary in this Disclosure Statement. Approval of the Disclosure Statement by the United States Bankruptcy Court <u>does</u> <u>not</u> constitute approval by the Bankruptcy Court on the merits of the Plan.

Any and all capitalized terms herein shall have the meaning prescribed such terms in the Debtor's Plan, or if no such definition is set forth in the Plan, then such words shall be read to have the meaning prescribed in the United States Bankruptcy Code. If any capitalized terms are not defined in the Plan or the United States Bankruptcy Code, such terms are intended to have their common every day meaning.

EXCEPT WHERE SPECIFICALLY STATED OTHERWISE, THE DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR AND HAS BEEN PREPARED BASED ON INFORMATION AVAILABLE TO THE DEBTOR. NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY THE VALUE OF THE ASSETS OF THE DEBTOR) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY.

## II.    HISTORY OF THE DEBTOR AND EVENTS LEADING TO THE FILING OF BANKRUPTCY

Chicora Life Center, LC (the "Debtor") is a manager managed limited company formed in 2014 and domesticated to Utah in 2016. The Debtor manages and leases real property on which is located a 400,000 square foot facility which occupies the site of the old naval hospital in North Charleston, South Carolina (the "Property"). Chicora Gardens Holdings, LLC ("CGH") is the Manager of the Debtor. Douglas M. Durbano is the Manager of Chicora Gardens Holdings, LLC.

CGH purchased the Property early in 2014 from the City of North Charleston, and then formed the Debtor as its wholly-owned subsidiary and transferred the Property to the Debtor. The Property was acquired and has been improved through financing from two lenders, UCF I Trust 1 and Antion Financial, LC.

Even before the purchase of the Property was finalized, the Debtor negotiated with Charleston County to become the anchor tenant for the Property. The Property is in an area of

North Charleston which is economically stagnant and in need of redevelopment, and Charleston County was in need of a place to centralize the various social services which it provides. On June 30, 2014, a lease was executed with Charleston County, contemplating that Charleston County would serve as an anchor tenant to revitalize the area in which the Property is located while at the same time turning the Property into a social services hub, featuring myriad social, non-profit and care facilities – all in one building centrally located in Charleston County. The lease is for 98,987 square feet, or 26.8% of the building on the Property, and would generate $151,217.46 per month in gross rent. The lease provided that Charleston County would take occupancy once tenant improvements were completed.

UCF I Trust 1 ("UCF") is a private lender based out of Massachusetts, formed as a Delaware statutory trust. It provided financing to the Debtor in August 2014 in the amount of $10,900,000 for use in operations and for completing tenant improvements for the Property, and in particular, for the lease with Charleston County. Difficulties arose in the Debtor's relationship with UCF. Although from the closing of the loan the Debtor has paid interest on the entire loan balance, UCF retained the right to determine whether to make disbursements to the Debtor and has at critical junctures refused to disburse the loan. The UCF loan documents also restrict the Debtor in obtaining secondary funding secured by the Property. In October 2015, the loan with UCF was amended to increase the loan amount to $13,900,000. Only after the amendment did UCF actually fully disburse the original $10,900,000. UCF has also at various times refused to comply with the Debtor's request for a payoff, thwarting the Debtor's efforts to refinance. UCF filed foreclosure proceedings which were stayed by the filing of this Chapter 11 case.

Antion Financial, LC ("Antion") is a private lender organized as a limited liability company in Utah of which Douglas M. Durbano is Manager. Antion is a last resort for financing for the Debtor, as the cost of funds is high. Although an affiliate of the Debtor, the terms upon which financing is offered to the Debtor are similar to the terms upon which Antion offers financing to third parties, which are likewise similar to terms upon which Antion has been lending to unrelated third parties for over ten years. Antion provided funding to the Debtor at critical times, including in the months before the Debtor obtained financing from UCF, during much of 2015 when UCF wrongfully withheld loan disbursements, as well as from and after early 2016 when UCF refused to disburse any additional funds from its loan.

The lease with Charleston County originally contemplated a completion date of January

1, 2015.  Due to the extensive length of time that it took to negotiate and consummate the lease, and as construction commenced, it became clear to both the Debtor and Charleston County that this deadline was unreasonable under the circumstances.  Accordingly, the fixed date for completion was removed with the goal of completing the tenant improvements as soon as possible.

The Debtor also discovered during this time that the Property, having been previously unoccupied for a significant time, was in need of a complete overhaul of the heating and cooling systems.  In discussions with Charleston County, it was decided to upgrade the system rather than repair the existing system.  This increased the time and costs required to complete the tenant improvements.  And at this same time, UCF refused to disburse loan proceeds despite receiving assurance from the Debtor that possible overruns would be covered by funding from Antion.  As the Debtor sought to increase its financing to complete the renovations and tenant improvements, its efforts were further hampered by Charleston County's refusal to reaffirm its obligations under the lease.  In the meantime, the Debtor advanced the renovations and tenant improvements through some additional funding from Antion, and eventually obtained the loan modification with UCF, albeit at a higher interest rate.

During the months in which UCF refused to disburse the loan, the Debtor did not have enough resources to pay all the contractors working on the Property.  As a result, it experienced delays from contractors refusing to perform additional work.  Many of these contractors filed and sought to enforce mechanic's liens against the Property, diverting the Debtor's energy toward resolution of these claims to preserve and protect the Property.  With the loan modification with UCF, the Debtor obtained sufficient funds to negotiate and resolve these outstanding claims and liens against the Property, as well as to complete the outstanding requirements for the tenant improvements for the signed leases.

By the end of 2015, the tenant improvements for Charleston County were approaching substantial completion, but at the same time it was becoming increasingly apparent that Charleston County was reticent about taking occupancy under its lease.  In early 2016, the Debtor obtained a certificate of occupancy for the space, and completed the necessary prerequisites for Charleston County to obtain licensing required for its leased space.  But shortly thereafter, in early March 2016, Charleston County Council voted to unilaterally terminate the lease, purportedly because of the delay in completion of the tenant improvements.  The Debtor

responded quickly and aggressively to enforce the lease, and is currently enforcing the lease and seeking reimbursement for costs of tenant improvements through the adversary proceeding against Charleston County handled by Richard A. Farrier, Jr. and Jennifer H. Thiem of the law firm of K&L GATES LLP.

Initially, the plan to utilize Charleston County as the anchor tenant for further development of the Property went well, as the Debtor also executed leases with Fetter Health Care Network, Inc., Charleston Dorchester Mental Health Center, and Tri-County Intergroup, Inc.  But when Charleston County began to show signs that it would renege on its lease, these other tenants showed similar inclinations.  Prior to the filing of this case, the Debtor filed suit against Fetter Health Care Network, Inc. to enforce its lease, and was in discussions with Charleston Dorchester Mental Health Center about the future of its lease.

### III.    POST-PETITION ACTIVITY AND OPERATIONS

**Bankruptcy Filing and Meeting of Creditors**

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 16, 2016 (the "Petition Date"). Since that time, the Debtor has operated as a debtor in possession pursuant to 11 U.S.C. §§1107(a) and 1108 of the Bankruptcy Code.  A first meeting of creditors was conducted upon the Debtor's chapter 11 filing on June 17, 2016.

**Initial Motions and Pleadings**

On May 17, 2016, the Debtor filed adversary case 16-80046 against Charleston County seeking relief against Charleston County for breach of its lease with the Debtor.

On May 23, 2016, the Debtor filed a Motion to Incur Debt/Obtain Credit, seeking approval of post-petition financing from Antion for ongoing operations.  The motion was granted on a final basis following the hearing held on June 23, 2016.

Also on May 23, 2016, the Debtor filed a Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b), seeking to establish the terms and conditions upon which utility service would continue for the Property, particularly in regards to electric service from SCE&G.  The motion was granted on a final basis following the hearing held on June 23, 2016.

On May 24 the Debtor filed a Motion for Authority to Pay a Prepetition insurance premium, which was granted following the hearing held on May 26, 2016.

On June 1, 2016, the Debtor filed an emergency motion for a temporary restraining

order, seeking an order restraining UCF from filing any collection action against Douglas M. Durbano on an alleged guaranty, as such action would cause irreparable harm to the Debtor's ability to obtain a successful reorganization, the Debtor relying upon Antion for continued funding for the plan of reorganization, and Antion relying upon the financial strength of Douglas M. Durbano for its continued ability to fund the Debtor. The Court immediately conducted a telephone conference with counsel for the Debtor and counsel for UCF present, and the Court concluded on the call that a temporary restraining order would issue pending a hearing on June 10, 2016. The Court then entered the temporary restraining order. Later that same day, UCF disregarded the Court's order, filing a complaint against Douglas M. Durbano in the United States District Court of South Carolina, Case No. 2:16-cv-1770-PMD. On June 10, 2016, the Court conducted a hearing on Debtor's request for a Preliminary Injunction. On June 15, 2016, the Court entered an Order granting Debtor's request for a Preliminary Injunction on an interim bases until August 1, 2016.

On June 22, 2016, Debtor filed a Motion to pay certain pre-petition workers compensation premiums. This motion is scheduled for a hearing July 18, 2016.

### Employment of Professionals

The Debtor filed an application to appoint McCarthy Law Firm, LLC, effective as of the Petition Date, as the Debtor's bankruptcy counsel on May 30, 2016. This application was granted by order entered on July 12, 2016.

The Debtor also filed an application to appoint K&L GATES LLP as litigation counsel for the adversary proceeding against Charleston County on May 31, 2016. This application was granted by Order entered June 24, 2016.

On June 22, 2016, the Debtor filed an application to employ Wills Massalon & Allen, LLC as Special Counsel related to the ongoing pre-petition litigation with the Fetter Health Care Network, Inc. This application remains pending.

The Debtor has filed an application to appoint SVN Tideland Commercial as its Real Estate Advisor and broker for marketing the Property for lease and/or sale. This application remains pending.

## Post-Petition Operations of the Debtor

Post-petition, the Debtor manages its assets and operates its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. As required by the United States Trustee and the Federal Rules of Bankruptcy Procedure, the Debtor is filing monthly operating reports detailing its post-petition operations, and the Debtor's monthly operating reports are incorporated herein by reference. As of the date of this Disclosure Statement, the Debtor's first monthly report was filed with the Court and is available on the Bankruptcy Court's electronic database (Pacer) located at its web page (www.scb.uscourts.gov/webpacer/webpacer.htm) or by request to Debtor's counsel at hpenn@mccarthy-lawfirm.com and bmccarthy@mccarthy-lawfirm.com.

## IV.   PROPERTY OF THE DEBTOR

## Primary Assets

As of the Petition Date, the Debtor's assets consist of the Property and its improvements and leases. The Property has a current value of approximately $42,000,000 as shown in the Debtor's schedules, but the value of the Property is a direct function of whether the leases are current. Without any leases in place and paying rent, the Property is worth approximately $29,000,000. If each of Charleston County, Fetter Health Care Network, Inc., Charleston Dorchester Mental Health Center, and Tri-County Intergroup are current on their leases, the Property is worth around $42,000,000. When fully leased, the Property will be worth even more.

Additionally, at the Petition Date the Debtor has cash/accounts of approximately $16,864.82, less any checks written but not yet deposited before the Petition Date, plus reserve accounts with UCF of $340,607.84. At the Petition date the Debtor also has receivables in the approximate amount of $975,683.38, and furnishings and fixtures worth approximately $1,000.00. The approximately $357,472.66 in cash and reserve accounts are believed to be collateral of UCF and will be used only in accordance with an approved cash collateral budget. The approximately $975,638.38 in accounts receivables, which are primarily comprised of unpaid rent and tenant improvement reimbursements, are collectible if the Debtor's business affairs are conducted in accordance with the Plan. The aggregate approximately $1,000.00 in furniture, fixtures, machinery and equipment are expected to have little to no value at the end of the Plan term.

## Bankruptcy and Other Causes of Action

The Debtor is in the process of reviewing its financial records with regard to whether

the Debtor has any causes of action pursuant to 11 U.S.C. §§ 547, 548, 549, and 550 ("Chapter 5 Causes of Action").  The Debtor has not completed its analysis of potential Chapter 5 Causes of Action in this matter, but such actions may specifically include, but are not limited to, any of the transactions described in more detail in the Debtor's Statement of Financial Affairs ("SoFA") filed by the Debtor as part of its Bankruptcy Schedules (Docket Item # 1 in this Case, attached for reference as **Exhibit A**).

The Disclosure Statement and Plan have been filed early in this matter, so the Debtor has not completed a detailed review of potential Chapter 5 Causes of Action to determine defenses available and collectability of such actions.  **Therefore, the Debtor specifically reserves all of its rights related to any and all Chapter 5 Causes of Action that are determined to exist, specifically including, but not limited to, the Debtor's rights to file suit on potential Chapter 5 Causes of Action.**

## V.  SUMMARY OF PROPOSED PLAN

Unless otherwise ordered by the Court, the Claims Bar Date shall be shall be **September 15, 2016 for all creditors except governmental units** and shall be **November 14, 2016 for a governmental unit** as such dates were set forth in the Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines issued on the Petition Date in this Case.  Unless specifically ordered otherwise by the Court, only Claims scheduled by the Debtor without any contingent, unliquidated, or disputed notations and those Claims filed on or before the Claims Bar Date shall constitute Claims asserted against the Debtor in this Case.  Any Claims filed after the Claims Bar Date shall be automatically disallowed unless the claimant successfully obtains an order of the Court allowing their late-filed proof of claim.  **The Debtor specifically reserves its right to object to any scheduled or asserted claims prior to the closing of the bankruptcy case.**

### Plan Classifications

**Class 1.**        **UCF 1 Trust 1 ("UCF").    Secured, Impaired.**    The Debtor has scheduled a disputed claim against UCF in the amount of $14,997,444.16 as of the Petition Date.  UCF asserts that it is secured by a perfected first priority mortgage in the Debtor's real property holdings as well as a pre-petition security interest in the accounts, deposit accounts, commercial tort claims, fixtures, equipment, instruments, inventory, investment property, chattel paper, letter of credit rights, supporting obligations, intangibles, and proceeds (the "Cash Collateral") of the

Debtor.  Debtor has shown this claim as disputed and reserves its rights to contest such claim by claims objections and other litigation as necessary after further investigation.

Until such time as a refinancing loan is available, upon the Effective Date of this Plan the Debtor's continued operations and lease of its remaining real property over the next five (5) years, the Debtor contemplates that no regular monthly payments will be made to UCF on its Allowed Claim, but anticipates payment in full of the Allowed Claim of UCF from such refinancing proceeds. In the event that after reasonable efforts the Debtor is unable to refinance its secured Debts, UCF shall be entitled to adequate protection payments from Cash Collateral to the extent shown in the Feasibility Budget.

**Class 2.** **Antion Financial, LC ("Antion").  Secured, Impaired.**   Antion, an affiliate and insider of the Debtor, alleges a second priority secured mortgage on the Debtor's real property in the approximate amount of $6,918,646.41 as of the Petition Date.  Upon entry of an Order Confirming Plan, this claim shall be subordinated to all other creditor claims herein. The Plan contemplates no payments of any cash consideration to Antion, until and after Classes 1 and 3 through 10 have had their Allowed Claims paid in full.

**Class 3.** **Administrative Claims of the U.S. Trustee and Estate Professionals. Administrative Priority, Unimpaired.**  This class consists of quarterly fees of the United States Trustee and any unpaid administrative claims of professionals.  United States Trustee fees for the Debtor will be paid by the Debtor in full upon the due date and any amounts remaining due for quarterly fees must be paid prior to the closing of the case.

The Debtor currently estimates post-petition professional fees in the aggregate amount of approximately $350,000.   Post-petition professional fees incurred through the date of confirmation will only be paid upon Court approval.  Unless otherwise ordered by the Court, post-petition professional fees incurred through the date of confirmation will be paid in full. Post-confirmation, professional fees, if any, will be paid monthly in the ordinary course.

**Class 4.** **Other Post-petition Operating Costs.  Administrative Priority, Unimpaired.**   This class consists of the Debtor's other post-petition operating expenses as shown in the Feasibility Budget.

Post-petition operating expenses shall be paid in full and will continue to be paid in the ordinary course of business.  Such post-petition ordinary course expenses include, but are not

11

limited to, the costs of closing attorneys, recording fees, and other ordinary closing costs associated with the Debtor's sale of properties.  The Debtor has filed an application for post-petition employment of its Sperry Van Ness, acting as the Debtor's primary leasing agency.

All of the Debtor's other post-petition operating expenses will be paid in full in the ordinary course of business.

**Class 5.** **Internal Revenue Service ("IRS").  Priority, Unimpaired.** The Debtor believes and asserts that it is current with any and all income and payroll taxes with the IRS. However, to any extent it is determined that the Debtor owes additional pre-petition taxes to the IRS, then such taxes will be paid in full upon the Effective Date of the Plan or such later date as they come due. Post-petition, any and all IRS taxes shall be kept current and paid in full from the Debtor's operating account.

**Class 6.** **South Carolina Department of Revenue ("SCDOR").  Priority, Unimpaired.**  The Debtor believes and asserts that it is current with any and all other excise, unemployment, income, and payroll taxes owed to SCDOR.  However, to any extent it is determined that the Debtor owes pre-petition taxes to SCDOR, then such taxes will be paid in full upon the Effective Date of the Plan or such later date as they come due. Post-petition, any and all taxes owed to SCDOR shall be kept current and paid in full from the Debtor's operating account.

**Class 7.** **Charleston County, South Carolina ("Charleston County Tax Office").  Priority, Unimpaired.**     The Debtor believes and asserts that all ad valorem property taxes that became due to Charleston County pre-petition were paid prior to the Petition Date.  To the extent it is determined that any pre-petition ad valorem taxes went unpaid, such property taxes will be paid in full within ninety (90) days after the Effective Date of the Plan. Upon entry of an Order Confirming Plan, the Debtor will continue to pay ad valorem taxes that become due post-petition as they become due in the ordinary course.

**Class 8.** **Chicora Life Center, LC Employees ("Employees").  Priority, Unimpaired.**     The Debtor has five (5) employees.  The Debtor will continue to employ the Employees in the ordinary course of its business without any interruption of work schedule or pay schedule through the term of the Plan.  All post-petition wages, benefits, and insurance premiums will be paid from the Debtor's operating account in the ordinary course of business at the regularly scheduled dates.

Upon confirmation of the Plan, any and all Allowed Claims in this class shall have been paid in full.

**Class 9.        General Unsecured Trade Vendors ("Trade Creditors").    Unsecured, Impaired.**    This Class is a convenience-type of class that includes the Debtor's Trade Creditors with whom it does business as a part of its normal operations.   The members of Class 9 are as follows:

1.  Ambassador in the amount of $2,040.00;

2.  AT&T in the amount of $1,818.01;

3.  Charleston Water System in the amount of $3,898.06;

4.  Federal Express in the amount of $153.34;

5.  Gravina in the amount of $4,000.00;

6.  Otis Elevator Service in the amount of $40,480.48;

7.  North Charleston Sewer District in the amended amount of $602.93;

8.  Charleston County Revenue Collections in the amount of $8,837.95;

9.  Sailboat Peace, LLC in the amount of $1,000.00;

10. SCE&G in the amount of $73,301.10;

11. Simplex-Grinnell in the amount of $1,207.55;

12. South Carolina Department of Labor, Licensing and Regulation – Elevator & Amusement Rides in the amount of $175.00;

13. SPE Properties, LLC in the amount of $5,550.00;

14. Suncoast Elevator Inspections, LLC in the amount of $625; and

15. US Hammerhead Construction in the amount of $22,130.45.

Any pre-petition Allowed Claims of general unsecured Trade Creditors in this Class will be paid in full, without interest, within ninety (90) days after the Effective Date of the Plan, or upon successful refinancing, whichever occurs sooner.

The post-petition amounts due to general Trade Creditors are not included in this Class. Post-petition amounts due to trade creditors will be paid in full as administrative priority claims in the ordinary course of the Debtor's business dealings with its trade creditors as set forth in the classes above.

**Class 10.        General Unsecured Creditors.    Unsecured, Impaired.**    This class of creditors consists of all unsecured creditors not included in Class 9.  This class shall include any

counter-claims or cross claims made by litigants in the disputes with Fetter Heath Care Network, Inc., Charleston County, John Singletary, Lee and Associates, or Matthew Richard Moore. Debtor does not believe there will be any Allowed Claims in Class 10.  To the extent that any claims are allowed, the holders of Allowed Claims in Class 10 shall receive *pro rata* payments on their Allowed Claims on a quarterly basis throughout the life of the Plan.

**Class 11.**     **Chicora Gardens Holding, LC ("Equity Interests").**  **Equity Holder, Impaired.**  This Class consists of the Equity Interests in the Debtor.  Though Doug Durbano is the manager of the Debtor, the Equity Interests in the Debtor are held by Chicora Gardens Holding which has three (3) members: 60% by Durbano Properties, LC, 28% by QSTV, LLC, 10% by BB&T Beachfront Development, LLC, and 2% of company reserved shares.  The Equity Interests in the Debtor will remain in place to the extent that all classes are paid in full as described above, or such classes consent to alternative treatment.

## VI.     EXECUTORY CONTRACTS

The Debtor intends to continue its normal operations in the ordinary course post-petition. Therefore, the Debtor shall assume all of the Executory Contracts, which Executory Contracts are shown in Schedule G of the Bankruptcy Schedules for the Debtor.   Schedule G is also attached to this Disclosure Statement as **Exhibit B**, and there are not believed to be any cure amounts due as evidenced by the Debtor's Schedule F filed with the Court.   Any and all cure amounts owed for Allowed Claims due to the assumption of Executory Contracts will be treated as Administrative Claims and will be paid in full as set forth in Class 4 hereinabove.

## VII.     LIQUIDATION AND OTHER ALTERNATIVES TO PLAN CONFIRMATION

There are three (3) possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan: (a) the Bankruptcy Court could dismiss the Debtor's Bankruptcy Case; (b) the Bankruptcy Court could consider alternative plans of reorganization or orderly liquidation, or (c) the Bankruptcy Court could convert the Debtor's Bankruptcy Case to a liquidation case under Chapter 7 of the Bankruptcy Code.   These alternatives are described briefly below.

**Dismissal**

Were the Debtor's Bankruptcy Case dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. Dismissal would force a race among creditors to take over and dispose of the Property. Any secured creditors would likely exercise their rights as secured creditors to foreclose and seize the Debtor's assets. Other creditors would quickly move to obtain and/or exercise judgments against the Debtor and its assets. Absent some sort of stay pending any appeal, judgment creditors would race to the courthouses to attempt to liquidate and collect against the Debtor's assets. A dismissal of the Chapter 11 case would likely lead to the ultimate closing and shut down of the Debtor's business operations, which in turn would lead to significantly lower and uneven distributions to the Debtor's creditors.

**Confirmation of an Alternative Plan**

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan of reorganization or liquidation. Any plan that does not contemplate the Debtor's continuing operations (i.e., a liquidation or limited operations plan) would likely lead to significantly lower or no payments to many creditors as the Debtor believes its operations create additional value for the Property. If the Debtor's Property were instead foreclosed upon or sold in a distressed sale, it would greatly reduce the amounts that could be realized. The Debtor believes that the Plan described herein enables the creditors and all parties-in-interest to obtain the highest payout and best result under the circumstances. Upon information and belief, the Debtor asserts that under any alternative plan substantially dissimilar to this Plan, the Debtor's key owners/employees might no longer be involved in the sales and lease of the Property, which might lead to a further devaluation of the Debtor's assets.

**Chapter 7 Liquidation**

If The Debtor were forced to shut down and quickly liquidate its assets under a chapter 7 trustee, the recovery for the unsecured creditors of the Debtor's estate would be significantly diminished. The Plan also offers the opportunity of avoiding additional administrative costs and delays that would result from a Chapter 7 liquidation. In addition to lower asset values in a liquidation, a Chapter 7 Trustee would, at a minimum, retain his/her own counsel, who would ordinarily need to devote a substantial amount of time reviewing the status of Claims and getting up to speed on various matters. Such review would include a substantial amount of time

duplicating tasks previously performed by other professionals in the case, thereby increasing both the costs and the time necessary to liquidate the Estate.  Statutory fees paid to the Chapter 7 Trustee would even further deplete the Estate.

## VIII.   FEASIBILITY OF THE PLAN

The Debtor believes and asserts that it has the ability to repay all creditors in full as set forth herein.  The Debtor has prepared and attached to this Disclosure Statement as **Exhibit C** a feasibility budget (the "Feasibility Budget") demonstrating the feasibility of the Plan. The Feasibility Budget demonstrates the Debtor's expected annual revenues, operating expenses, and distributions over the life of the Plan.  The Feasibility Budget demonstrates the Debtor's ability to make the payments called for in Classes 1-9 of the Plan.  11 U.S.C. §1129(a)(11) provides that in order for a plan of reorganization to be confirmed, it must be demonstrated that the plan is not likely to be followed by a liquidation or the need for further reorganization of the debtor.  The Debtor's Plan calls for stabilization of the occupancy of the Property or the orderly liquidation of the Debtor's assets over the course of the Plan term.  Based on the Feasibility Budget, the Debtor believes that it can demonstrate the ability to pay the debts called for in Classes 1-10 of the Plan, therefore the Debtor asserts that the Plan is not likely to be followed by a liquidation or the need for further reorganization of the Debtor.

## IX.      FURTHER FINANCIAL INFORMATION

The Debtor has filed its Schedules with the Bankruptcy Court as required by the Bankruptcy Code. The Debtor may also supplement and amend its Schedules as may be necessary and appropriate from time to time. The Debtor will file monthly operating reports until the Case is closed. Due to their voluminous nature, neither monthly reports nor the Debtor's Schedules have been included in this Disclosure Statement.  However, all of the Debtor's filings may be examined at the Clerk's Office, United States Bankruptcy Court, District of South Carolina, J. Bratton Davis United States Court House, 1100 Laurel Street, Columbia, SC 29202. A copy of the Debtor's filings in this Case can also be obtained on the Bankruptcy Court's electronic database (Pacer) located at its web page (www.scb.uscourts.gov/webpacer/webpacer.htm) or by contacting Debtor's counsel.

Creditors seeking further financial information may contact Debtor's counsel at

hpenn@mccarthy-lawfirm.com and bmccarty@mccarthy-lawfirm.com to request further information regarding the Debtor.  The Debtor will make every effort to respond to specific, reasonable requests for any non-privileged, non-confidential information.

## X.    CERTAIN RISK FACTORS TO BE CONSIDERED

Holders of Claims against and Equity Interests in the Debtor should read and consider carefully the factors set forth below, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

### A. Risk of Non-Confirmation of Plan

Although the Debtor believes the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  If Confirmation of the Plan is denied or revoked, the Plan shall be null and void in all respects. Nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by, against, or Equity Interest in, the Debtor; (2) prejudice in any manner the rights of the Debtor; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor in any respect. The Debtor reserves the right to revoke, withdraw, or amend the Plan and Disclosure Statement prior to Confirmation. Moreover, there can be no assurance that modifications to the Plan will not be required in order to obtain Confirmation or that such modifications would not necessitate a re-solicitation of votes. If the Debtor revokes or withdraws the Plan, then the result of this shall be the same as if the Order Confirming Plan had not been entered.

### B. Risk of Underperformance

In addition to the risks related to obtaining Confirmation described above, the ultimate recovery under the Plan depends upon the Debtor's ability to continue to perform in its business operations and in the lease of commercial real property.  Though the Debtor projects it will perform in accordance with the Feasibility Budget, there is always a risk that the Debtor's business could underperform due to any number of reasons, including, but not limited to, some further unforeseen negative economic change in the real estate industry. The Debtor has done its

best to conservatively project the feasibility of the Plan, but such projections represent the Debtor's best prediction and are not a certainty.

## XI. TAX CONSEQUENCES

Subject to the limitations noted below, the following discussion is a summary of certain U.S. federal income tax consequences expected to result from the implementation of the Plan relevant to holders of Claims entitled to vote with respect to adoption of the Plan. This discussion is based on the Internal Revenue Code of 1986, as amended (the "Revenue Code"), in effect on the date of this Disclosure Statement, on U.S. Treasury Regulations in effect (or in certain cases, proposed) on the date of this Disclosure Statement, and on judicial and administrative interpretations thereof available on or before such date. All of the foregoing is subject to change, which change could apply retroactively and could affect the tax consequences described below. There can be no assurance that the Internal Revenue Service (the "IRS") will not take a contrary view with respect to one or more of the issues discussed below, and no ruling from the IRS or opinion of counsel has been sought with respect to any issues that may arise under the Plan.

The following summary is for general information only and does not purport to address all of the U.S. federal income tax consequences that may be applicable, including to any particular Claim holder or Equity Interest. The tax treatment of a holder of a Claim or a Claim of Interest will vary depending upon such holder's particular situation. The following discussion does not address state, local or foreign tax considerations that may be applicable to the Debtor or to a holder of a Claim or an Equity Interest. This summary does not address tax considerations applicable to holders that may be subject to special tax rules.

No statement in this Disclosure Statement should be construed as legal or tax advice. The Debtor and its professionals do not assume any responsibility or liability for tax consequences that the holder of a Claim or an Equity Interest may incur as a result of the treatment afforded a Claim or Equity Interest under the Plan.

EACH HOLDER OF A CLAIM OR AN INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR WITH RESPECT TO THE PLAN, INCLUDING ANY APPLICABLE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230,

HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE REVENUE CODE; (B) SUCH DISCUSSION IS BEING USED IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) BY THE DEBTOR; AND (C) HOLDERS OF CLAIMS OR EQUITY INTERESTS SHOULD SEEK ADVICE OF AN INDEPENDENT TAX ADVISOR BASED ON THEIR PARTICULAR CIRCUMSTANCES.

### A. **Federal Tax Consequences to the Debtor**

No federal income taxes appear in the Feasibility Budget attached to the Disclosure Statement as **Exhibit C** because the Debtor is a consolidated entity with Chicora Gardens Holdings for tax purposes.  Such taxes shall continue to be paid by Chicora Gardens Holding.

The Debtor is a manager-managed limited liability company.  Chicora Gardens Holding is  manager of the Debtor and owns all shares of the Debtor.  As a Utah limited company, the Debtor is consolidated with Chicora Gardens Holding for federal income tax purposes. As a result, any income tax liabilities or other attributes arising as a result of or in connection with the execution of the Plan will generally flow through to Chicora Gardens Holding.

Subject to certain limitations, any losses reported on previous tax returns were passed through to the Shareholders. These losses and any refunds or tax benefits attributable thereto are personal to the Shareholders, and are not available to creditors as an asset of the Debtor.

### B. **Federal Tax Consequences to Holders of Claims or Equity Interests**

The federal income tax consequences of the implementation of the Plan to the holders of Allowed Claims or Equity Interests will depend on, among other things, the consideration to be received by the Claim holder, whether the Claim or Interest holder reports income on the accrual or cash method, whether the Claim or Interest holder receives distributions under the Plan in more than one taxable year, and whether the Claim holder has previously taken any bad debt deduction or a worthless security deduction with respect to its Claim.

In general, a holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the holder's tax basis in the Claim. Any gain or loss recognized may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the holder, the length of

time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, the holder's deduction of the loss may be subject to limitation. The holder's tax basis for any property received under the Plan generally will equal the amount realized. The holder's amount realized should equal the sum of the Cash and the fair market value of any other property received by the holder under the Plan, less the amount (if any) treated as interest, as discussed below.

Because certain holders of Allowed Claims may receive Cash distributions after the Effective Date, the imputed interest provisions of the Code may apply and cause a portion of the subsequent distributions to be treated as interest. Additionally, because holders may receive distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial distribution, any loss and a portion of any gain realized by the holder may be deferred. All holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their Claims.

Holders of Allowed Claims will recognize ordinary income to the extent that they receive Cash or property that is allocable to accrued but unpaid interest that the holder has not yet included in its income. If an Allowed Claim includes interest, and if the holder receives less than the amount of the Allowed Claim pursuant to the Plan, the holder must allocate the Plan consideration between principal and interest.  Holders of Allowed Claims should consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally as a loss.

A holder who receives in respect of a Claim or an Interest an amount less than the holder's tax basis in the Claim or Interest may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under Section 166(a) of the Code, a loss under Section 165(a), or a worthless securities deduction under Section 165(g) of the Code. The rules governing the character, timing and amount of bad debt, loss, and worthless securities deductions place considerable emphasis on the facts and circumstances of the holder, the obligor and the instrument with respect to which a deduction is claimed. Holders of Claims or Interests, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

**C.  Backup Withholding Tax and Information Reporting Requirements**

U.S. federal backup withholding tax and information reporting requirements generally apply to certain payments to certain non-corporate Claim holders. Information reporting generally will apply to payments under the Plan, other than payments to an exempt recipient. The Debtor may be required to withhold backup withholding tax from any payments made under the Plan, other than payments to an exempt recipient, if such Claim holder fails to furnish its correct taxpayer identification number or otherwise fails to comply with, or establish an exemption from, such backup withholding tax requirements.

THE ABOVE SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR OR EQUITY INTEREST HOLDER. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN.

## XIII.  CONCLUSION

The Creditors, parties in interest, and readers of this Disclosure Statement are directed to the Plan of Liquidation for specific treatment of their particular claims against the Debtor.

The Debtor reserves all of its rights to amend this Disclosure Statement as necessary, pursuant to the terms of the Bankruptcy Code and rules of the Court, specifically including rights to file any amendments necessary to address new financial information and analyses as well as to address any other relevant information that may be discovered.

**[Signature on Following Page]**

RESPECTFULLY SUBMITTED on this the 15th day of July 2016, at Columbia, South Carolina.

MCCARTHY LAW FIRM, LLC

By:    /s/W. Harrison Penn
           G. William McCarthy, Jr., I.D.#2762
           Daniel J. Reynolds, Jr., I.D.#9232
           W. Harrison Penn, I.D.#11164
           *Attorneys for the Debtor*
           1517 Laurel Street
           P.O. Box 11332
           Columbia, SC 29201-1332
           (803) 771-8836
           (803) 765-6960 (fax)
           hpenn@mccarthy-lawfirm.com

**EXHIBIT  A**
(SoFA Part 2, and Part 13)

**Fill in this information to identify the case:**

Debtor name    **Chicora Life Center, LC**

United States Bankruptcy Court for the:    DISTRICT OF SOUTH CAROLINA

Case number (if known) _____

☐ Check if this is an
   amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy    04/16

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

### Part 1:   Income

1. **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2016** to **Filing Date** | ■ Operating a business<br>☐ Other _____ | **$730,062.90** |
| **For prior year:**<br>From **1/01/2015** to **12/31/2015** | ■ Operating a business<br>☐ Other _____ | **$24,083.04** |
| **For year before that:**<br>From **1/01/2014** to **12/31/2014** | ■ Operating a business<br>☐ Other _____ | **$18,500.00** |

2. **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|

### Part 2:   List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor   **Chicora Life Center, LC**                                Case number *(if known)* _____

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>*Check all that apply* |
|---|---|---|---|
| 3.1. **Capital Premium Financing**<br>12235 South 800 East<br>Draper, UT 84020 | 3/18/2016<br>4/15/2016 | $23,111.60 | ☐ Secured debt<br>■ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other__ |
| 3.2. **Antion Financial**<br>476 Heritage Park Blvd., Suite 200<br>Layton, UT 84041 | 2/12/2016 | $13,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>■ Other  Reversed transaction |
| 3.3. **K&L Gates, LLP**<br>134 Meeting Street, Ste. 300<br>Charleston, SC 29401 | 4/22/2016 | $40,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |
| 3.4. **McCarthy Law Firm, LLC**<br>1517 Laurel Street<br>Columbia, SC 29201 | 5/10/2016 -<br>$15,000<br>5/16/2015 -<br>$60,000 | $75,000.00 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>■ Services<br>☐ Other__ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1. **SPE Properties**<br>3600 Rivers Avenue, Ste. 2300<br>Charleston, SC 29401<br>**Insider** | 10/05/2015 | $67,241.00 | **Services** |
| 4.2. **Double D Construction, LC**<br>3600 Rivers Avenue, Ste. 2300<br>Charleston, SC 29401<br>**Affiliate** | May<br>2015-Dec<br>2015 | $1,935,943.66 | **Services - Construction** |

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account

Debtor **Chicora Life Center, LC**                   Case number *(if known)* _____

of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☐ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| **UCF1 Trust 1**<br>745 Boylston Street, #502<br>Boston, MA 02116 | **Refused to disburse funds for maintenance of building (insurance/payroll/utilities)**<br>Last 4 digits of account number:   **0085** | 3/11/2016 | $20,000.00 |

---

**Part 3:    Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
   List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Lee & Associates vs. Chicora, et al.**<br>**2014-CP-10-7481** | | **Court of Common Pleas Ninth Judicial Circuit**<br>**100 Broad Street, #106**<br>**Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | **Matthew Richard Moore vs. Blackburn, et. al.**<br>**2015-CP-10-3585** | | **Court of Common Pleas Ninth Judicial Circuit**<br>**100 Broad Street, #106**<br>**Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.3. | **John Singletary vs. Chicora Gardens Holdings, et. al**<br>**1:15-CV-04463** | | **US District Court, District of Charlesto**<br>**85 Broad Street**<br>**Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.4. | **Chicora Life Center, LC vs. Fetter Health Care Network, Inc., et. al.**<br>**2016-CP-10-2380** | **Breach of Contract** | **Charleston County Court of Common Pleas**<br>**100 Broad Street, Ste. 106**<br>**Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.5. | **UCF1 Trust 1 vs. Chicora Life Center, LC, et. al.**<br>**2016-CP-10-1434** | **Foreclosure** | **Charleston County Court of Common Pleas**<br>**100 Broad Street, Ste. 106**<br>**Charleston, SC 29401** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

8. **Assignments and receivership**
   List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

---

**Part 4:    Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

---

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

Debtor    **Chicora Life Center, LC**                                  Case number *(if known)* _____

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**Part 13:    Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**26. Books, records, and financial statements**
    26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
      ☐ None

| Name and address | | Date of service<br>From-To |
|---|---|---|
| 26a.1. | **Brent Wilde**<br>**476 Heritage Park Boulevard, #200**<br>**Layton, UT 84041** | **9/2014 - Present** |

    26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

      ☐ None

| Name and address | | Date of service<br>From-To |
|---|---|---|
| 26b.1. | **Eide Bailly, LLP**<br>**5929 Fushion Point Drive, #300**<br>**Ogden, UT 84403-4684** | **1/01/2015 - 2/2016**<br>**2015 tax prep** |

    26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

      ■ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| | |

    26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

      ☐ None

| Name and address |
|---|
| 26d.1.  **UCF 1 Trust 1**<br>       **745 Boylston Street, #502**<br>       **Boston, MA 02116** |

**27. Inventories**
Have any inventories of the debtor's property been taken within 2 years before filing this case?

| Debtor | Chicora Life Center, LC | Case number *(if known)* | |

■ No
☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Chicora Gardens Holdings | 476 Heritage Park Boulevard, #200 Layton, UT 84041 | Manager | 100% |

**29.** Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

■ No
☐ Yes. Identify below.

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
■ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Jeremy Blackburn SPE Properties 2852 River Vista Way Mount Pleasant, SC 29466** | $67,241 | 10/05/2015 | **Lease Commission** |
| | Relationship to debtor Property Manager/Agent | | | |

**31.** Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?

☐ No
■ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Chicora Gardens Holdings, LLC | EIN: 46-1544807 |

**32.** Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|

**EXHIBIT  B**

(Schedule G – Executory Contracts)

**Fill in this information to identify the case:**

Debtor name    **Chicora Life Center, LC**

United States Bankruptcy Court for the:   DISTRICT OF SOUTH CAROLINA

Case number (if known) _____

☐ Check if this is an
amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1. **Does the debtor have any executory contracts or unexpired leases?**
  ☐ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
  ☑ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1.** State what the contract or lease is for and the nature of the debtor's interest    **Lease with Debtor as Landlord**<br><br>State the term remaining    **25 years**<br><br>List the contract number of any government contract | **Charleston County**<br>**4045 Bridge View Drive**<br>**North Charleston, SC 29405** |
| **2.2.** State what the contract or lease is for and the nature of the debtor's interest    **Lease with Debtor as Landlord**<br><br>State the term remaining    **5 years**<br><br>List the contract number of any government contract | **Charleston Dorchester Mental Health**<br>**2100 Charlie Hall Boulevard**<br>**Charleston, SC 29414** |
| **2.3.** State what the contract or lease is for and the nature of the debtor's interest    **Lease with Debtor as Landlord**<br><br>State the term remaining    **5 years**<br><br>List the contract number of any government contract | **Franklin C. Fetter Family Health Center**<br>**51 Nassau Street**<br>**Charleston, SC 29403** |
| **2.4.** State what the contract or lease is for and the nature of the debtor's interest    **(14 months prepaid)**<br><br>State the term remaining    **5 years**<br><br>List the contract number of any government contract | **SPE Properties, LLC**<br>**3600 Rivers Avenue**<br>**Suite 2300**<br>**North Charleston, SC 29405** |

Debtor 1   **Chicora Life Center, LC**
First Name         Middle Name          Last Name

Case number *(if known)*

### Additional Page if You Have More Contracts or Leases

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|

| 2.5. | State what the contract or lease is for and the nature of the debtor's interest | **Lease with Debtor as Landlord.** | |
|---|---|---|---|
| | State the term remaining | **10 years** | |
| | List the contract number of any government contract | | **Tri-County Intergroup, Inc.**<br>**3600 Rivers Avenue, #2200**<br>**North Charleston, SC 29405** |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com

**EXHIBIT  C**
(Feasibility Budget)

**Chicora Life Center, LC**

DISCUSSION DRAFT

60 Month Financial Plan

| | | | | 2016 | | | 2017 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | October | November | December | January | February | March | April | May | June | July | August | September | October | November | December |
| **Revenue** | Lease Up | 400,000 | | | | | | | | | | | | | | | | |
| Rental & CAM Income | Percentage | Sqft | FS Rate | | | | | | | | | | | | | | | |
| Tenant Lease Up Initial 20% | 20% | 80,000 | $  20.50 | | | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 10% | 40,000 | $  20.50 | | | | | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 20% | 20% | 80,000 | $  20.50 | | | | | | | | | | | | | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 10% | 40,000 | $  20.50 | | | | | | | | | | | | | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 10% | 40,000 | $  20.50 | | | | | | | | | | | | | | |
| Tenant Lease Up additional 10% | 10% | 40,000 | $  20.50 | | | | | | | | | | | | | | |
| Sale of Corner Lot | | | | | | 1,000,000 | | | | | | | | | | | | |
| **Total Revenue** | | | | $0 | $0 | $1,136,667 | $136,667 | $205,000 | $205,000 | $205,000 | $205,000 | $205,000 | $205,000 | $205,000 | $205,000 | $273,333 | $410,000 | $410,000 |
| UCF Remaining Remaining Reserves as of the filing Date | Beginning Balance: | $340,608 | 250,000 | 90,608 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Antion Financial DIP Financing * | Available: | $1,000,000 | | 280,000 | | 120,000 | | 200,000 | 200,000 | | | | | | | | |
| Refinance Project | | | | | | | | | | | | | | 20,578,190 | 1,165,000 | 1,260,000 | 826,667 | 333,333 |
| Cash Available after from Financing | | | | 250,000 | 370,608 | - | 120,000 | - | 200,000 | 200,000 | - | - | - | 20,578,190 | 1,165,000 | 1,260,000 | 826,667 | 333,333 |
| Cash on Hand | | | | 10,000 | 19,844 | 11,920 | 258,389 | 4,357 | 9,159 | 203,961 | 392,263 | 342,064 | 270,200 | 170,168 | 75,964 | 12,889 | 101,792 | 6,945 |
| **Total Cash Available for All Expenses** | | | | $260,000 | $390,452 | $1,148,587 | $515,055 | $209,357 | $414,159 | $608,961 | $597,263 | $547,064 | $475,200 | $20,953,358 | $1,445,964 | $1,546,222 | $1,338,459 | $750,279 |
| **Secured Creditor Payments** | | | | | | | | | | | | | | | | | | |
| Pre Petition UCF | Principle Bal on Filing Date: | 13,559,292 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 89,486 | 13,883,950 | | | | |
| Pre Petition Antion Financial | Principle Bal on Filing Date: | $5,122,552 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 33,813 | 5,209,312 | | | | |
| Post Petition Antion Financial DIP | Principle Bal as of 9/31/2016: | $200,000 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 6,600 | 964,793 | | | | |
| Post Petition Refinance | | | | | | | | | | | | | | 85,742.46 | 90,596.63 | 95,846.63 | 99,291.07 |
| **Unsecured Creditor Payments** | | | | | | | | | | | | | | | | | | |
| Other Creditors Paid In Full Over The Course of 59 Months | Approximate Balance: | $175,000 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 2,966 | 145,339 | | | | |
| **Tenant Improvement & Lease Commission Costs** | | | | | | | | | | | | | | | | | | |
| Space Already Improved (Org for County, Fetter, & Mental Health) | | | 50,000 | 100,000 | 50,000 | | | | | | | | | | | | |
| Unimproved space | | | | | 630,000 | 300,000 | | | | | | | | 333,333.33 | 1,160,000.00 | 1,160,000 | 826,666.67 | 333,333.33 |
| Common Area Improvements | | | 20,000 | 10,000 | | | | 10,000 | 10,000 | | | | | | | | |
| **Bankruptcy Atty Fees** | | | | | | | | | | | | | | | | | | |
| Attorney Fees | | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| **Operational Expenses** | | | | | | | | | | | | | | | | | | |
| G & A | | | 21,667 | 21,667 | 53,333 | 53,333 | 53,333 | 53,333 | 53,333 | 108,333 | 130,000 | 151,667 | 151,667 | 173,333 | 173,333 | 195,000 | 195,000 |
| Marketing | | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Sales Operations | | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| **Property Insurance & Taxes** | | | | | | | | | | | | | | | | | | |
| Insurance | | | | | | | | | | | | | 115,000 | | | | |
| Property Taxes | | | | 100,000 | | | | | | | | | | | 200,000 | |
| **Professional/BK Costs** | | | | | | | | | | | | | | | | | | |
| Professional Fees | | | | 10,000 | | | | | | | | 60,000 | | | | 10,000 |
| Accounting Fees | | | | | 4,000 | | | | | | | | | | | |
| Trustee Fees | | | 1,625 | | 6,500 | | | 6,500 | | | 6,500 | | | 6,500 | | |
| **Total Expenses** | | | | 240,156 | 378,531 | 890,198 | 510,698 | 200,198 | 210,198 | 216,698 | 255,198 | 276,865 | 305,031 | 20,877,394 | 1,433,076 | 1,444,430 | 1,331,513 | 651,624 |
| **Total Cash Available after Expenses** | | | | 19,844 | 11,920 | 258,389 | 4,357 | 9,159 | 203,961 | 392,263 | 342,064 | 270,200 | 170,168 | 75,964 | 12,889 | 101,792 | 6,945 | 98,654 |

* Antion DIP Finance of $1,000,000 of which approximately 200,000 would be drawn on as of the beginning of this plan, thus only an additional 800,000 is to be drawn during this plan period.

# Chicora Life Center, LC

### DISCUSSION DRAFT

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 2018 | | | | | | |
| **Revenue** | | | | | | | | | | | | |
| Rental & CAM Income | | | | | | | | | | | | |
| Tenant Lease Up Initial 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | | | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | | | | | | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | | | | | | | | | 68,333 | 68,333 | 68,333 | 68,333 |
| Sale of Corner Lot | | | | | | | | | | | | |
| **Total Revenue** | **$410,000** | **$410,000** | **$478,333** | **$478,333** | **$478,333** | **$546,667** | **$546,667** | **$546,667** | **$615,000** | **$615,000** | **$615,000** | **$615,000** |
| UCF Remaining Remaining Reserves as of the filing Date | - | - | - | - | - | - | - | - | - | - | - | - |
| Antion Financial DIP Financing * | | | | | | | | | | | | |
| Refinance Project | 333,333 | 333,333 | 333,333 | 333,333 | 333,333 | | | | | | | |
| **Cash Available from Financing** | **333,333** | **333,333** | **333,333** | **333,333** | **333,333** | - | - | - | - | - | - | - |
| **Cash on Hand** | 98,654 | 196,474 | 305,405 | 481,281 | 649,268 | 822,366 | 666,233 | 503,601 | 224,969 | 474,503 | 717,537 | 717,072 |
| **Total Cash Available for All Expenses** | **$841,988** | **$939,808** | **$1,117,072** | **$1,292,948** | **$1,460,934** | **$1,369,032** | **$1,212,900** | **$1,050,268** | **$839,969** | **$1,089,503** | **$1,332,537** | **$1,332,072** |
| **Secured Creditor Payments** | | | | | | | | | | | | |
| Pre Petition UCF | | | | | | | | | | | | |
| Pre Petition Antion Financial | | | | | | | | | | | | |
| Post Petition Antion Financial DIP | | | | | | | | | | | | |
| Post Petition Refinance | 100,679.96 | 102,068.85 | 103,457.74 | 104,846.63 | 106,235.51 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 |
| **Unsecured Creditor Payments** | | | | | | | | | | | | |
| Other Creditors Paid In Full Over The Course of 59 Months | | | | | | | | | | | | |
| **Tenant Improvement & Lease Commission Costs** | | | | | | | | | | | | |
| Space Already Improved (Org for County, Fetter, & Mental Health) | | | | | | | | | | | | |
| Unimproved space | 333,333 | 333,333 | 333,333 | 333,333 | 333,333 | 333,333 | 333,333 | 333,333 | | | | |
| Common Area Improvements | | | | | | | | | | | | |
| **Bankruptcy Atty Fees** | | | | | | | | | | | | |
| Attorney Fees | | | | | | | | | | | | |
| **Operational Expenses** | | | | | | | | | | | | |
| G & A | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 |
| Marketing | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | | | | | |
| Sales Operations | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | | | | | |
| **Property Insurance & Taxes** | | | | | | | | | | | | |
| Insurance | | | | | | | | 126,500 | | | | |
| Property Taxes | | | | | | | | | | | 250,000 | |
| **Professional/BK Costs** | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | |
| Accounting Fees | 6,000 | | | | | | | | | | | |
| Trustee Fees | 6,500 | | | 6,500 | | | 6,500 | | | 6,500 | | |
| **Total Expenses** | 645,513 | 634,402 | 635,791 | 643,680 | 638,569 | 702,799 | 709,299 | 825,299 | 365,466 | 371,966 | 615,466 | 365,466 |
| **Total Cash Available after Expenses** | 196,474 | 305,405 | 481,281 | 649,268 | 822,366 | 666,233 | 503,601 | 224,969 | 474,503 | 717,537 | 717,072 | 966,606 |

* Antion DIP Finance of $1,000,000 of which approximately 200,000 wo

**Chicora Life Center, LC**

DISCUSSION DRAFT

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2019 | | | | | | | |
| **Revenue** | | | | | | | | | | | | |
| Rental & CAM Income | | | | | | | | | | | | |
| Tenant Lease Up Initial 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Sale of Corner Lot | | | | | | | | | | | | |
| **Total Revenue** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** |
| UCF Remaining Remaining Reserves as of the filing Date | - | - | - | - | - | - | - | - | - | - | - | - |
| Antion Financial DIP Financing * | | | | | | | | | | | | |
| Refinance Project | | | | | | | | | | | | |
| **Cash Available after from Financing** | - | - | - | - | - | - | - | - | - | - | - | - |
| **Cash on Hand** | 966,606 | 1,209,640 | 1,459,175 | 1,708,709 | 1,951,744 | 2,201,278 | 2,450,812 | 2,693,847 | 2,804,231 | 3,053,765 | 3,296,800 | 3,246,334 |
| **Total Cash Available for All Expenses** | **$1,581,606** | **$1,824,640** | **$2,074,175** | **$2,323,709** | **$2,566,744** | **$2,816,278** | **$3,065,812** | **$3,308,847** | **$3,419,231** | **$3,668,765** | **$3,911,800** | **$3,861,334** |
| **Secured Creditor Payments** | | | | | | | | | | | | |
| Pre Petition UCF | | | | | | | | | | | | |
| Pre Petition Antion Financial | | | | | | | | | | | | |
| Post Petition Antion Financial DIP | | | | | | | | | | | | |
| Post Petition Refinance | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 |
| **Unsecured Creditor Payments** | | | | | | | | | | | | |
| Other Creditors Paid In Full Over The Course of 59 Months | | | | | | | | | | | | |
| **Tenant Improvement & Lease Commission Costs** | | | | | | | | | | | | |
| Space Already Improved (Org for County, Fetter, & Mental Health) | | | | | | | | | | | | |
| Unimproved space | | | | | | | | | | | | |
| Common Area Improvements | | | | | | | | | | | | |
| **Bankruptcy Atty Fees** | | | | | | | | | | | | |
| Attorney Fees | | | | | | | | | | | | |
| **Operational Expenses** | | | | | | | | | | | | |
| G & A | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 |
| Marketing | | | | | | | | | | | | |
| Sales Operations | | | | | | | | | | | | |
| **Property Insurance & Taxes** | | | | | | | | | | | | |
| Insurance | | | | | | | | | 139,150 | | | |
| Property Taxes | | | | | | | | | | | 300,000 | |
| **Professional/BK Costs** | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | |
| Accounting Fees | | | | | | | | | | | | |
| Trustee Fees | 6,500 | | | 6,500 | | | 6,500 | | | 6,500 | | |
| **Total Expenses** | 371,966 | 365,466 | 365,466 | 371,966 | 365,466 | 365,466 | 371,966 | 504,616 | 365,466 | 371,966 | 665,466 | 365,466 |
| **Total Cash Available after Expenses** | 1,209,640 | 1,459,175 | 1,708,709 | 1,951,744 | 2,201,278 | 2,450,812 | 2,693,847 | 2,804,231 | 3,053,765 | 3,296,800 | 3,246,334 | 3,495,868 |

* Antion DIP Finance of $1,000,000 of which approximately 200,000 wo

## Chicora Life Center, LC

**DISCUSSION DRAFT**

| | January | February | March | April | May | June | July | August | September | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2020** | | | | | | | | | | | | |
| **Revenue** | | | | | | | | | | | | |
| Rental & CAM Income | | | | | | | | | | | | |
| Tenant Lease Up Initial 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 |
| Sale of Corner Lot | | | | | | | | | | | | |
| **Total Revenue** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** |
| UCF Remaining Remaining Reserves as of the filing Date | - | - | - | - | - | - | - | - | - | - | - | - |
| Antion Financial DIP Financing * | | | | | | | | | | | | |
| Refinance Project | | | | | | | | | | | | |
| **Cash Available after from Financing** | - | - | - | - | - | - | - | - | | - | | - |
| Cash on Hand | 3,495,868 | 3,745,403 | 3,994,937 | 4,244,472 | 4,494,006 | 4,743,540 | 4,993,075 | 5,242,609 | 5,339,078 | 5,588,613 | 5,838,147 | 5,737,682 |
| **Total Cash Available for All Expenses** | **$4,110,868** | **$4,360,403** | **$4,609,937** | **$4,859,472** | **$5,109,006** | **$5,358,540** | **$5,608,075** | **$5,857,609** | **$5,954,078** | **$6,203,613** | **$6,453,147** | **$6,352,682** |
| **Secured Creditor Payments** | | | | | | | | | | | | |
| Pre Petition UCF | | | | | | | | | | | | |
| Pre Petition Antion Financial | | | | | | | | | | | | |
| Post Petition Antion Financial DIP | | | | | | | | | | | | |
| Post Petition Refinance | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 |
| **Unsecured Creditor Payments** | | | | | | | | | | | | |
| Other Creditors Paid In Full Over The Course of 59 Months | | | | | | | | | | | | |
| **Tenant Improvement & Lease Commission Costs** | | | | | | | | | | | | |
| Space Already Improved (Org for County, Fetter, & Mental Health) | | | | | | | | | | | | |
| Unimproved space | | | | | | | | | | | | |
| Common Area Improvements | | | | | | | | | | | | |
| **Bankruptcy Atty Fees** | | | | | | | | | | | | |
| Attorney Fees | | | | | | | | | | | | |
| **Operational Expenses** | | | | | | | | | | | | |
| G & A | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 |
| Marketing | | | | | | | | | | | | |
| Sales Operations | | | | | | | | | | | | |
| **Property Insurance & Taxes** | | | | | | | | | | | | |
| Insurance | | | | | | | | 153,065 | | | | |
| Property Taxes | | | | | | | | | | | 350,000 | |
| **Professional/BK Costs** | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | |
| Accounting Fees | | | | | | | | | | | | |
| Trustee Fees | | | | | | | | | | | | |
| **Total Expenses** | 365,466 | 365,466 | 365,466 | 365,466 | 365,466 | 365,466 | 365,466 | 518,531 | 365,466 | 365,466 | 715,466 | 365,466 |
| **Total Cash Available after Expenses** | 3,745,403 | 3,994,937 | 4,244,472 | 4,494,006 | 4,743,540 | 4,993,075 | 5,242,609 | 5,339,078 | 5,588,613 | 5,838,147 | 5,737,682 | 5,987,216 |

* Antion DIP Finance of $1,000,000 of which approximately 200,000 wo

**Chicora Life Center, LC**

DISCUSSION DRAFT

| | January | February | March | April | May | June | July | August | September | | 3 Months 2016 | 12 Months 2017 | 12 Months 2018 | 12 Months 2019 | 12 Months 2020 | 9 Months 2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 2021 | | | | | | | | | Annual Summary | | | |
| **Revenue** | | | | | | | | | | | | | | | | |
| Rental & CAM Income | | | | | | | | | | | | | | | | |
| Tenant Lease Up Initial 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | | 136,667 | 1,640,000 | 1,640,000 | 1,640,000 | 1,640,000 | 1,230,000 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | | - | 751,667 | 820,000 | 820,000 | 820,000 | 615,000 |
| Tenant Lease Up additional 20% | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | 136,667 | | - | 273,333 | 1,640,000 | 1,640,000 | 1,640,000 | 1,230,000 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | | - | 205,000 | 820,000 | 820,000 | 820,000 | 615,000 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | | - | - | 683,333 | 820,000 | 820,000 | 615,000 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | | - | - | 478,333 | 820,000 | 820,000 | 615,000 |
| Tenant Lease Up additional 10% | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | 68,333 | | - | - | 273,333 | 820,000 | 820,000 | 615,000 |
| Sale of Corner Lot | | | | | | | | | | | 1,000,000 | - | - | - | - | - |
| **Total Revenue** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | **$615,000** | | **$1,136,667** | **$2,870,000** | **$6,355,000** | **$7,380,000** | **$7,380,000** | **$5,535,000** |
| UCF Remaining Remaining Reserves as of the filing Date | - | - | - | - | - | - | - | - | - | | 340,608 | - | - | - | - | - |
| Antion Financial DIP Financing * | | | | | | | | | | | 280,000 | 520,000 | - | - | - | - |
| Refinance Project | | | | | | | | | | | - | 24,163,190 | 1,666,667 | - | - | - |
| Cash Available after from Financing | - | - | - | - | - | - | - | - | - | | 620,608 | 24,683,190 | 1,666,667 | - | - | - |
| Cash on Hand | 5,987,216 | 6,236,750 | 6,486,285 | 6,735,819 | 6,985,353 | 7,234,888 | 7,484,422 | 7,733,956 | 7,815,119 | | 10,000 | 258,389 | 6,945 | 966,606 | 3,495,868 | 5,987,216 |
| **Total Cash Available for All Expenses** | **$6,602,216** | **$6,851,750** | **$7,101,285** | **$7,350,819** | **$7,600,353** | **$7,849,888** | **$8,099,422** | **$8,348,956** | **$8,430,119** | | **$1,767,275** | **$27,811,579** | **$8,028,612** | **$8,346,606** | **$10,875,868** | **$11,522,216** |
| **Secured Creditor Payments** | | | | | | | | | | | | | | | | |
| Pre Petition UCF | | | | | | | | | | | 268,458 | 14,510,352 | - | - | - | - |
| Pre Petition Antion Financial | | | | | | | | | | | 101,440 | 5,446,004 | - | - | - | - |
| Post Petition Antion Financial DIP | | | | | | | | | | | 19,799 | 1,010,990 | - | | | |
| Post Petition Refinance | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | 170,466 | | - | 371,477 | 1,710,548 | 2,045,587 | 2,045,587 | 1,534,191 |
| **Unsecured Creditor Payments** | | | | | | | | | | | - | | - | - | - | - |
| Other Creditors Paid In Full Over The Course of 59 Months | | | | | | | | | | | 8,898 | 166,102 | - | - | - | - |
| | | | | | | | | | | | - | - | - | - | - | - |
| **Tenant Improvement & Lease Commission Costs** | | | | | | | | | | | - | - | - | - | - | - |
| Space Already Improved (Org for County, Fetter, & Mental Health) | | | | | | | | | | | 200,000 | - | - | - | - | - |
| Unimproved space | | | | | | | | | | | 630,000 | 4,113,333 | 2,666,667 | - | - | - |
| Common Area Improvements | | | | | | | | | | | 30,000 | 20,000 | - | - | - | - |
| **Bankruptcy Atty Fees** | | | | | | | | | | | - | - | - | - | - | - |
| Attorney Fees | | | | | | | | | | | 30,000 | 120,000 | - | - | - | - |
| **Operational Expenses** | | | | | | | | | | | - | | - | - | - | - |
| G & A | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | 195,000 | | 96,667 | 1,491,667 | 2,340,000 | 2,340,000 | 2,340,000 | 1,755,000 |
| Marketing | | | | | | | | | | | 6,000 | 24,000 | 14,000 | - | - | - |
| Sales Operations | | | | | | | | | | | 6,000 | 24,000 | 14,000 | - | - | - |
| **Property Insurance & Taxes** | | | | | | | | | | | - | | | | | |
| Insurance | | | | | | | 168,372 | | | | - | 115,000 | 126,500 | 139,150 | 153,065 | 168,372 |
| Property Taxes | | | | | | | | | | | 100,000 | 200,000 | 250,000 | 300,000 | 350,000 | - |
| **Professional/BK Costs** | | | | | | | | | | | - | | | | | |
| Professional Fees | | | | | | | | | | | 10,000 | 70,000 | - | - | - | - |
| Accounting Fees | | | | | | | | | | | - | 4,000 | 6,000 | - | - | - |
| Trustee Fees | | | | | | | | | | | 1,625 | 26,000 | 26,000 | 26,000 | - | - |
| **Total Expenses** | **365,466** | **365,466** | **365,466** | **365,466** | **365,466** | **365,466** | **365,466** | **533,837** | **365,466** | | **1,508,886** | **27,712,925** | **7,153,715** | **4,850,737** | **4,888,652** | **3,457,562** |
| **Total Cash Available after Expenses** | **6,236,750** | **6,486,285** | **6,735,819** | **6,985,353** | **7,234,888** | **7,484,422** | **7,733,956** | **7,815,119** | **8,064,654** | | **258,389** | **98,654** | **874,897** | **3,495,868** | **5,987,216** | **8,064,654** |

* Antion DIP Finance of $1,000,000 of which approximately 200,000 wo