**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **16-02447-jw**

# ORDER DENYING CHARLESTON COUNTY'S MOTION FOR RECONSIDERATION OF ORDER IN AID OF IMPLEMENTATION

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/26/2017**



US Bankruptcy Judge
District of South Carolina

Entered: 07/26/2017

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| IN RE: | C/A No. 16-02447-JW |
|---|---|
| Chicora Life Center, LC, | Chapter 11 |
| Debtor. | |

**ORDER DENYING CHARLESTON COUNTY'S MOTION FOR RECONSIDERATION OF ORDER IN AID OF IMPLEMENTATION**

This matter comes before the Court on the motion ("Motion")[1] of Charleston County, a political subdivision of South Carolina ("County"), seeking relief from this Court's Order in Aid in Implementation entered on June 1, 2017 ("Order" or "Order in Aid"). The Debtor-in-Possession Chicora Life Center, LC ("Chicora"), filed a timely objection to the Motion ("Objection").

Having considered the parties' arguments, the record in the Adversary Proceeding and this, the Main Bankruptcy Case, as well as the applicable legal authorities, the Court denies the County's Motion, making the following findings:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

### I.  Legal Standard

A "motion to reconsider" is not recognized by either the Federal Rules of Civil Procedure[3] or the Bankruptcy Rules. Because the County filed the Motion within fourteen (14) days after entry of the Order in Aid, the Court must treat the Motion as one to alter or amend a judgment pursuant

---

[1] The Motion was filed pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 (hereinafter "Bankruptcy Rule").

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[3] Hereinafter "Rule."

to Rule 59(e). *See Robinson v. Wix Filtration*, 599 F.3d 403, 412 (4th Cir. 2010); *McCall v. Williams*, 59 F. Supp. 2d 556, 558 (D.S.C. 1999).

Rule 59(e) is available to a party seeking to have a judgment altered or amended: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.[4] *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *King's Grant Golf Acquisition, LLC v. Abercrombie* (*In re T2 Green*), 364 B.R. 592, 606 (Bankr. D.S.C. 2007). "Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *In re T2 Green*, 364 B.R. at 606; *accord McCall v. Williams*, 59 F. Supp. 2d at 558. A Rule 59(e) motion cannot be used to relitigate issues, "or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co.*, 148 F.3d at 403 (internal citation omitted). Nor will a party's dissatisfaction with the Court's ruling support relief pursuant to Rule 59(e). *Hutchinson v. Staton,* 994 F.2d 1076, 1082 (4th Cir. 1993); *McCall v. Williams*, 59 F. Supp. 2d at 558 ("Mere disagreement with how the law is applied does not support a Rule 59(e) motion.").

## II.   County's Requested Relief

The County advances two broad arguments in support of the Motion. First, the County argues that the Order's findings regarding the impact of the Confirmed Plan[5] on the Lease were made before the County had the opportunity to "address the underlying issue or fairly litigate its

---

[4] What constitutes "clear error" is not specifically defined. Generally, the term "should conform to a very exacting standard and the court should have a clear conviction of error before finding that a final judgment was predicated on clear error." *King's Grant Golf Acquisition, LLC v. Abercrombie* (*In re T2 Green LLC*), 364 B.R. 592, 606 (Bankr. D.S.C. 2007) (internal citations omitted). Furthermore:

> [w]hile the "manifest injustice" standard is even more vague than "clear error," it can be said that "manifest injustice does not exist [when] a party could easily have avoided the outcome, but instead elected not to act until after a final order had been entered."

*Id.* (*citing Lightfoot v. District of* Columbia, 355 F. Supp. 2d 414, 422 (D.D.C. 2005)).

[5] Terms defined in the First Summary Judgment Order, entered on June 5, 2017, shall have the same meaning in this Order.

2

liability under the Lease." Second, the County asks the Court to reconsider its finding that by certain of its post-petition actions, the County repudiated the Lease. The Court will address each argument in turn.

### A. Confirmed Plan and Order In Aid

#### 1. Due Process

The Order in Aid was entered following the County's unequivocal declaration to this Court in its May 8, 2017 report and at the May 9, 2017 hearing that, notwithstanding Chicora's right to perform as a result of its assumption of the Lease, the County would not accept Chicora's continued performance of the preconditions necessary to trigger the Effective Date. The County made it clear that, under no circumstances would it ever occupy the Leased Premises, and that it intended to unilaterally seek termination of the Lease. In light of the County's declaration repudiating the Lease, the Court entered the Order in Aid and directed Chicora to elect either to continue to perform the Lease, or to treat the County's actions as an anticipatory breach. In this Motion, the County argues that it was deprived of due process when the Court entered the Order in Aid without granting it an additional opportunity to respond.

Title 11 U.S.C. § 1142(b)[6] authorizes this Court to direct "the debtor and any other necessary party . . . to perform any other act . . . that is necessary for the consummation of the plan." The County points to no code section, rule, or case that requires the Court to alert a party of its decision to enter an order it deems necessary to aid in the consummation of a confirmed plan – particularly a party who failed in the first instance to interpose an objection to the Confirmed Plan.

---

[6] Hereinafter, all references to provisions under the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be by section number only.

    In addition to § 1142(b), § 105 of the Code explicitly gives the Court the power to:

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Confronted with the County's unequivocal refusal to accept any future performance by Chicora, the consequence of which would have significant negative impacts on the debtor and other creditors of the estate, entry of the Order in Aid was appropriate and necessary to redefine the path of the Chapter 11 reorganization.

    The County has been provided multiple opportunities to voice all of its arguments: the County stated its position and arguments in its May 8, 2017 Report and the statements of its counsel at the May 9, 2017 hearing, and in the County's Motions for Reconsideration of the Order in Aid and First Summary Judgment Order (filed on June 14 and June 19 respectively). The County further advanced its position in its Response to Chicora's Election to Assert Anticipatory Breach (filed June 14, 2017), and in its Sur-Reply to Chicora's Election to Assert Anticipatory Breach (filed July 3, 2017). The Court has carefully considered the County's position on all issues related to the Lease, and finds the County has been afforded due process.

    2. <u>Plan Adequacy</u>

    The County argues that § 365(b) required Chicora "to clearly inform the County that the Confirmed Plan would bar all rights to assert prepetition monetary and nonmonetary damages." More accurately, it appears the County asks the Court to impose upon the Debtor-in-Possession the obligation to go beyond the plain language of the Second Plan and advise an adverse party of the legal consequences of that party's failure to protect its rights.[7]

---

[7] At the May 9, 2017 hearing, the County indicated that it never viewed itself as a party to the Main Bankruptcy Case and Second Plan, and claimed it lacked standing to participate in the Main Bankruptcy Case. Having had actual notice

4

Although couched in terms of a motion seeking reconsideration of the Order in Aid, the Motion is, in reality and effect, a collateral attack of the unappealed Confirmation Order and Confirmed Plan. This is not a proper use of Rule 59(e). Having failed to take any action in the Main Bankruptcy Case,[8] and despite having actual notice of the Second Plan and confirmation hearing, it is too late for the County to complain about its treatment in or the sufficiency of the Confirmed Plan.

Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Notice:

> must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.'

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15 (1950).

Prior to the January 4, 2017 confirmation hearing, the County was served with all versions of the Second Plan (which ultimately became the Confirmed Plan). The County received notice of the deadline for filing objections to the Second Plan and a ballot allowing it to vote on the Second Plan.[9] The Second Plan gave the County actual notice of Chicora's proposed treatment of the County's Counterclaims (*see* Class 11), and of Chicora's intention to "continue its normal

---

of the Second Plan, its provisions, and all related proceedings, the County either erred in that conclusion, or made a calculated decision to ignore the Main Bankruptcy Case.

[8] The only action taken by the County in the Main Bankruptcy Case prior to the entry of the Order in Aid was the filing of a Notice of Appearance.

[9] The ballot served on the County and all other creditors contains the following express notice: "If the plan is confirmed by the court [sic] it will be binding on you whether or not you vote."

operations in the ordinary course post-petition," and to assume the Lease (*see* Article VII).[10] Chicora's Second Plan was confirmed by this Court after a confirmation hearing that was attended by counsel for the County. The Confirmation Order was entered and the Second Plan was confirmed without objection, comment, or ballot from the County. The Confirmation Order was not appealed, and it is a final order of this Court.

"[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). The County does not dispute that it had actual notice of the provisions of the Second Plan, the pendency of the Main Bankruptcy Case, and the opportunity to present any objections (including any related to defaults or future performance), and to cast a ballot against the Second Plan. If the County believed that the Second Plan was defective in any respect, the burden was on the County to raise its objections to the Court, Chicora, and other creditors in the Main Bankruptcy Case <u>prior to</u> the entry of the Confirmation Order. *See State of Md. v. Antonelli Creditor's Liquidating Tr.*, 123 F.3d 777, 782 (4th Cir. 1992) (creditors with "knowledge, choice, and opportunity" to object to confirmation of a chapter 11 plan who failed to do so are barred from making a collateral attack on the provisions of the plan with which they do not agree); *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251 (4th Cir.

---

[10] The County also takes issue with Chicora's failure to list the County as a creditor in Schedule F, suggesting that this justifies the County's failure to object to the Second Plan, and provides support for the County's claim that it lacked standing.

The absence of the County from Schedule F is irrelevant. Far from validating the County's argument, it evidences Chicora's belief that it owed the County no monetary cure amounts. Chicora's position on this issue is expressed in Article VII and Class 11, wherein Chicora disputes the estate's liability for this claim. *See* Confirmed Plan at Class 11 ("[The County's] counterclaim seeks a declaratory judgment that the lease is terminated for failure to make the premises ready for occupancy . . . and return of the initial payment of $92,821.00 made at the time of lease execution. <u>The lease, however, does not provide for return of the $92,821.00 even in the event that the Debtor was found to have breached the lease.</u> . . . Based on the foregoing, <u>the Debtor does not project any recovery for any of the foregoing creditors</u> . . . .") (emphasis added).

6

1997) (creditor with notice of proceedings and orders who failed to object or appeal may not collaterally attack rulings). Instead, the County chose to do nothing.

As recognized by this and other courts:

It should have come as no surprise . . . [to creditors that the Chapter 11] Plan, which is the culmination of the entire case and signals treatment of all creditors in a debtor's bankruptcy case, would address [creditor's claims]. In bankruptcy cases, creditors bear the burden of policing the plan's treatment of claims.

*In re Twins, Inc.*, 318 B.R. 90, 99 (Bankr. D.S.C. 2004); *accord Varat Enters., Inc. v. Nelson, Mullins, Riley and Scarborough*, 81 F.3d 1310 (4th Cir. 1996) (citing *Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir.1983)) (creditor who ignores bankruptcy proceeding by failing to object does so at its own peril); *In re Williams*, 166 B.R. 615, 619 (Bankr. E.D. Va. 1994) (same); *see also In re Linkous*, 990 F.2d 160, 163 (4th Cir. 1993) (The Court expects creditors to take some responsibility in the bankruptcy process or lose their rights) (citing *Matter of Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) ("[The creditor] was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.")).

Faced now with the legal consequences of its calculated decision not to participate in the confirmation process, but to rely instead on its prepetition Termination Letter and the Attempted Termination, the County cannot now, under the guise of the Motion, seek to collaterally challenge the provisions of the Confirmed Plan, or blame this Court or the debtor for its failure to take steps protect its rights under the Lease. *See Stern v. Marshall,* 564 U.S. 462, 481–82 (2011) ("We have recognized 'the value of waiver and forfeiture rules' in 'complex' cases . . . . In such cases, . . . the consequences of 'a litigant . . . 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor,' can be particularly severe." (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487–488, n.6 (2008) and *Puckett v. United States*, 556 U.S. 129, 135 (2009))); *see also United States v. Olano*, 507 U.S. 725, 731

7

(1993) ("'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'") (internal citation omitted).

### B. Repudiation and Anticipatory Breach

The County contends that the statements it made on May 8 and 9, 2017 do not amount to a repudiation of the Lease. To the contrary, the County now asserts that it embraces and does not intend to breach the Lease, but merely intends to issue a post-petition notice of default,[11] or to invoke Articles 3 or 54 of the Lease.

Assuming for the sake of argument that the County intended to merely advise the Court and Chicora of its perceived options, the result is the same: the County unequivocally communicated its intent not to accept or allow Chicora's performance of the assumed Lease.

"Repudiation" is defined as a party's refusal to perform an obligation it owes to another party, and consists of such words or actions by the contracting party that indicate that they are not going to perform their part of the contract in the future. 30 S.C. Jur., *Contracts* § 66 (Supp. 2017); *see also Franconia Assoc. v. U.S.*, 536 U.S. 129, 143 (2002) (A "promisor's renunciation of a contractual duty before the time fixed in the contract for . . . performance is a repudiation." (internal citations and quotation marks omitted)). To constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. "The repudiation or renunciation may be by language or act making it futile for the other party to proceed." 17B C.J.S. Contracts § 712 (Supp. 2017).

---

[11] To the extent that the County intends to issue a post-petition notice of default based on Chicora's alleged prepetition defaults, the County is prohibited from attempting to do so by virtue of the Confirmed Plan and the County's prepetition waiver of said defaults. *See* Order Denying County's Motion for Reconsideration of Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, and Denying Defendant's Request for Summary Judgment at 9, entered herewith.

Because it assumed the Lease pursuant to the Confirmed Plan and Confirmation Order, Chicora is allowed, as a matter of law, to continue to perform under the Lease. As a result of the nearly year-long disruption in Chicora's performance due to the County's ineffective Attempted Termination, it was necessary for the Court to establish new timelines and clarify the parties' responsibilities, to enable both sides to fulfill their post-assumption obligations under the Lease. To facilitate this process, the Court ordered the parties to inform the Court of, among other things, the steps each believed were necessary to satisfy the preconditions to the Effective Date, a proposed schedule to fully complete each step, and any other issue relevant regarding each party's fulfillment of its current and future obligations under the Lease.

Chicora's report and its statements made at the hearing on the report indicated, as the Lease does, Chicora's need for the County's cooperation to enable it to complete its performance. This included, among other things, a request for the parties to engage in good faith discussions about budget overages related to the Tenant Improvements, issuance of an estoppel certificate by the County to assist Chicora in obtaining additional funding, a determination of the remaining scope of work, and implementation of a reasonable standard for the County's satisfaction with and acceptance of the Tenant Improvements.

In contrast, the County's report and statements at the hearing indicated that it had completely lost trust in Chicora. The County made it abundantly clear that it had decided to reject any performance by Chicora, and that any further performance by Chicora would be "futile" and an "economic waste" because, regardless of Chicora's assumption of the Lease, the County had terminated the Lease in March 2016 and was "moving on" and would never occupy the Leased Premises. In short, the County's unilateral and unequivocal declarations effectively stopped and prevented Chicora's post-petition performance.

9

While the County has pointed to specific Lease provisions that it believes would allow it under certain conditions to terminate the Lease without occupancy, the County has yet to trigger or seek enforcement those provisions.[12] It appears that the County intends to impede Chicora's performance without meeting its burden of showing the applicability and effectiveness of the Lease provisions it has cited.

Regardless of the method by which it selects to accomplish its goal of not accepting performance or occupying the Leased Premises, having expressly made it clear its view that, "it would be futile . . . for the Court to grant [Chicora] more time under Section 365 [to perform]," or for Chicora "to pursue a futile, expensive effort to satisfy the requirements of the Effective Date of the Lease," and having refused to accept or cooperate with Chicora's post-petition performance efforts, all while not triggering the Lease provisions it believes allow it to terminate without breach, the County has repudiated the Lease.

A party's repudiation of a contractual duty ripens into a breach prior to the time for its performance only if the promisee (in this case, Chicora) elects to treat it as such. *Franconia Associates v. U.S.*, 536 U.S. 129 (2002). In response to a repudiation, the counterparty must decide how to respond via an election of one of the following remedies:

i) rescind the contract and pursue a remedy in quantum meruit;

ii) treat the contract as still binding and wait until the time arrives for the breaching party to perform and, upon a failure of performance, bring an action for actual breach of contract; or

---

[12] Although it was clear at the May 9, 2017 hearing that Chicora and the Court understood that the County was not going to accept Chicora's performance under any circumstances, inexplicably, the County has yet to take any action to enforce the rights it claims under the Lease. Particularly in light of the Order in Aid, which put the County on notice of the Court's view of its May 8 and 9, 2017 declarations, one would have expected the County to act. The County attributes its inaction on the pendency of the reconsideration motions, but this claim is disingenuous, particularly given the County's knowledge that pursuant to the Confirmed Plan, the Debtor-in-Possession has agreed with other creditors to a limited period of time (until on or about January 2018) to reach its primary reorganization goals, or grant relief against the Property. The County's delay in triggering an act to support its repudiation of the Lease appears, in part, to be an effort to "run out the clock," and a means of extinguishing the Debtor-in-Possession's reorganization efforts.

10

iii) treat the renunciation/anticipatory breach as an immediate breach (an anticipatory breach) and sue at once for any damages the party may have sustained.

23 Williston on Contracts §§ 63:51 and 63:52 (4th ed.); 17B C.J.S. *Contracts* §§ 715 and 716. When asked by the Court, on June 6, 2017, Chicora elected to treat the renunciation as an immediate breach and to ask the Court to conduct a trial on its damages.[13]

The County did not present, nor is the Court aware of any argument or evidence of an intervening change in controlling law that would justify a different conclusion, nor any new evidence not available earlier. Nor has the County convincingly pointed to a clear error of law or manifest injustice.

## **CONCLUSION**

To support its request for reconsideration of the Order in Aid, the County had the burden of showing the need to correct a clear error of law or prevent manifest injustice. *See In re T2 Green LLC*, 364 B.R. at 606. The County did not meet its burden. Therefore, the Motion is denied.

The issue of whether the County's repudiation of the Lease by refusing to accept continued performance gives rise to a compensable damages claim by Chicora will be decided by the Court in a separate hearing, at which time the Court may also determine the application of any other Lease provisions affirmatively elected by the County. To assist the parties and the Court in such a hearing, a pretrial status hearing shall be held on **August 1, 2017 at 1:30 p.m.,** at the King and Queen Building, 145 King Street Room 225, Charleston, South Carolina 29401.

**AND IT IS SO ORDERED.**

---

[13] Until such time as the Court orders otherwise, Chicora is excused from tendering performance to the County because to do so would be a useless act. *See, e.g., Carmichael v. Dan Nance Corp.*, 264 S.E.2d 601, 603 (S.C. 1980) (equity will not require the doing of a futile task); *Orange Bowl Corp. v. Warren*, 386 S.E.2d 293, 296 (S.C. Ct. App. 1989) ("The law does not require a party to perform a useless act.").

11